# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WEI LIU, an individual,<br><br>Petitioner,<br><br>v.<br><br>BLAISE BARRELET as Trustee of the BARRELET FAMILY TRUST,<br><br>Respondent. | Case No.: 3:23-cv-02186-RBM-SBC<br><br>**ORDER**<br><br>**(1) GRANTING MOTION TO COMPEL ARBITRATION**<br><br>**(2) GRANTING APPLICATION FOR ORDER PERMITTING SUBMISSION OF NEW EVIDENCE IN OPPOSITION TO MOTION TO COMPEL**<br><br>**[Docs. 4, 12]** |

Pending before the Court is Petitioner Wei Liu's ("Liu") Motion to Compel Arbitration ("Motion"), which was filed on April 10, 2024. (Doc. 4.) On May 14, 2024, Respondent Blaise Barrelet, as Trustee of the Barrelet Family Trust ("Barrelet"), filed an

Opposition to Liu's Motion.[1] (Doc. 9.) On May 21, 2024, Liu filed a Reply in Support of her Motion ("Reply"). (Doc. 10.)

The Court finds this matter suitable for determination without oral argument pursuant to Civil Local Rule 7.1(d)(1). For the reasons discussed below, Liu's Motion is **<u>GRANTED</u>**.

## I.   <u>BACKGROUND</u>

**A.   Barrelet's State Court Action and Appeal**

On October 31, 2022, Barrelet filed a Complaint for (1) Breach of Written Contract, (2) Breach of Implied Covenant of Good Faith and Fair Dealing, (3) Conversion, and (4) Violation of California Civil Code § 1950.5 against Liu in the Superior Court of California, County of San Diego, Case No. 37-2022-00043748-CU-BC-CTL. (Doc. 9-1 at 23–29[2] ["State Court Complaint"].) Barrelet alleged that, on or about March 9, 2022, Liu leased Barrelet the residential property located at 16627 Los Morros, Rancho Santa Fe, CA 92067 (the "Property") pursuant to the terms of the California Association of Realtors' ("CAR") form Residential Lease After Sale (the "Lease"). (*Id.* ¶ 5.) Pursuant to the terms and conditions of the Lease, Barrelet delivered to Liu $40,000 to be held as a security deposit. (*Id.* ¶ 6.)

Barrelet alleged that the Lease expired on May 18, 2022 and that he vacated and surrendered possession of the Property in clean and good condition and repair. (*Id.* ¶¶ 8–9.) Barrelet alleged that Liu failed to "provide the required documentation together with the required itemization of deductions from Plaintiff's Security Deposit within the statutory period of [21] days, or thereafter until the present, as expressly required under California Civil Code, [s]ection 1950.5 and the Lease." (*Id.* ¶ 10.) Barrelet alleged that Liu "wrongfully and intentional[ly] withheld the Security Deposit in bad faith and refused Plaintiff's repeated requests for return of the deposit." (*Id.* ¶ 11.)

---

[1] Liu and Barrelet are collectively referred to the as the "Parties."
[2] The Court cites to the CM/ECF pagination unless otherwise noted.

After Barrelet filed the State Court Complaint, Liu sought an order compelling the case to arbitration based on the arbitration provision in the CAR's form California Residential Purchase Agreement and Joint Escrow Instructions (the "Purchase Agreement") that preceded the Lease. (Doc. 9-1 at 67 [Tentative Ruling].) The arbitration provision states:

> The Parties agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration. ... *Enforcement of, and any motion to compel arbitration pursuant to, this agreement to arbitrate shall be governed by the procedural rules of the Federal Arbitration Act ["FAA"], and not the California Arbitration Act,* notwithstanding any language seemingly to the contrary in this Agreement.

(*Id.* (emphasis added).) The Parties agreed, and the trial court confirmed, that the arbitration provision encompassed both the Purchase Agreement and the subsequent Lease. (*Id.*) Interpreting the plain language of the arbitration provision, the trial court found that "the arbitration agreement is governed by the 'procedural rules of the [FAA]' but not the substantive rules [of the FAA] as the agreement expressly states only the FAA's 'procedural rules.'" (*Id.* at 68.) The trial court then held that "[s]ubstantively, under California law, Civil Code [§] 1953(a)(4) invalidates any provision in a lease that agrees to waive or modify procedural rights in litigation, including the right to a jury trial. … Here, [Barrelet's] complaint asserts breaches and violations of the [Lease] and tenancy related claims. Accordingly, arbitration is precluded." (*Id.*)

The California state appellate court affirmed the trial court's decision.[3] (Doc. 12-1 [Appellate Court Decision] at 2.) The appellate court held that "the plain language of the

---

[3] On September 4, 2024, Barrelet filed an Application for Order Permitting Submission of New Evidence in Opposition to Liu's Motion ("Application"). (Doc. 12.) In his Application, Barrelet asks the Court to accept submission of the appellate court's decision in the State Court Action for consideration in connection with Liu's Motion. (*Id.* at 2.) Liu does not oppose the Application and relies on the appellate court's decision in her Reply.

agreement indicates the parties intended for substantive California law to govern in general and for federal procedural law as set forth in the FAA to govern in the context of the agreement to arbitrate." (*Id.* at 6.) Therefore, the appellate court agreed "with the trial court's conclusion that the arbitration agreement at issue here is governed by the procedural rules of the FAA, and by substantive California state law." (*Id.* at 9.) The appellate court then found that California Civil Code § 1953(a)(4), a substantive law that voids the waiver of litigation rights in a dwelling lease or rental agreement as contrary to public policy, voided the arbitration provision as it pertains to disputes concerning the Lease. (*Id.* at 9–12.)

**B.    Liu's Petition to Compel Arbitration**

On November 20, 2023, Liu filed a Petition to Compel Arbitration ("Petition") before this Court pursuant to FAA, 9 U.S.C. § 4. (Doc. 1 ["Petition"].) In her Petition, Liu asserts that she purchased a single-family residence on a large lot with a vineyard from Barrelet. (*Id.* ¶ 1.) Liu asserts that, while Barrelet represented that the vineyard was in perfect condition, Barrelet did not allow Liu to conduct a second inspection. (*Id.*) After the close of escrow, Liu discovered that the vineyard contained many grape vines that were dead or dying. (*Id.*) Similarly, despite representations that there were no easements on the Property, Liu learned that an open space easement encumbered large portions of the Property. (*Id.* ¶ 2.) The open space easement prevented Liu and her husband from undertaking future improvement plans that they had for the Property, thereby reducing the fair market value of the Property. (*Id.*) Liu asserts that her claims include "breach of contract, fraud in the inducement and deceit by intentional and/or negligent misrepresentation, and fraud and deceit by concealment of material facts." (*Id.* ¶ 3.) Liu states that she "selected the Judicial Arbitration and Mediation Service ('JAMS')[,] filed

---

(*See* Doc. 10 at 6.) Accordingly, Barrelet's Application is **GRANTED**, and the Court will consider the appellate court's decision in the State Court Action.

its complaint-in-arbitration with JAMS, and [] paid the JAMS filing fee" but that "Barrelet refuses to arbitrate." (*Id.* ¶ 9.)

Barrelet did not respond to Liu's Petition.

**C.  Liu's Motion to Compel Arbitration**

On April 10, 2024, Liu filed a Motion to Compel Arbitration ("Motion"). (Doc. 4.) In her Motion, Liu re-asserts the allegations from her Petition. (*Id.* at 2–4.) Liu then argues that an order for arbitration is proper here because (1) diversity jurisdiction exists[4] and (2) the disputes between the parties fall within the scope of the arbitration agreement. (*Id.* at 4–5.)

**D.  Barrelet's Opposition**

In his Opposition, Barrelet responds that the Petition fails to state a claim because it does not provide factual support for the "bare legal conclusion" that Barrelet refused to arbitrate. (Doc. 9 at 19.) Barrelet argues that Liu "unilaterally demanded arbitration before a tribunal not provided for by the agreement, using JAMS rules not provided for by the agreement, and in a forum not provided for by the agreement." (*Id.* at 20.) Barrelet also argues that "the additional evidence provided has shown, respondent did not simply refuse arbitration." (*Id.*) Rather, "[h]is counsel submitted argument to JAMS …." (*Id.*; *see also id.* at 27–29.) Given Barrelet's objections, JAMS declined to proceed with the arbitration because the Purchase Agreement "does not name JAMS or the JAMS rules." (Doc. 9-1, Declaration of J. Ray Ayers ["Ayers Decl."], ¶ 11, Ex 10.)

Barrelet also responds that there is no valid agreement to arbitrate because the arbitration agreement is not properly authenticated and, as the state court found, arbitration provisions in residential lease agreements are void as against public policy. (*Id.* at 20–21.)

---

[4] Barrelet does not dispute that diversity jurisdiction exists, so the Court will not address it below.

1 Lastly, Barrelet argues that the FAA does not apply or preempt California law because the transaction at issue does not affect interstate commerce.[5] (*Id.* at 22–27.)

### E. Liu's Reply

In her Reply, Liu summarily argues that the contract at issue in this action is the Purchase Agreement, which contains an arbitration provision; that Barrelet's claim in the state court action is based on the Lease, not the Purchase Agreement; that the state court invalidated the arbitration agreement only in reference to the Lease; and that Barrelet "refused to proceed with arbitration not only with JAMS, but also anywhere in Orange County and Los Angeles County, and has never stated that he will even consider arbitration in any forum." (Doc. 10 at 5.)

Specifically, Liu argues that "[t]he state court invalidated the arbitration provision only in reference to the Lease [], not the Purchase Agreement …." (*Id.* at 6.) Liu then concludes that "[t]he arbitration provision is fully operative in reference to the Purchase Agreement." (*Id.*) Liu also argues that Barrelet is judicially estopped from claiming that the arbitration agreement was not fully signed, that California Civil Code § 1953(a)(4) applies to leases, that Barrelet refused to arbitrate, and that the Purchase Agreement affects interstate commerce. (*Id.* at 6–11.) Finally, Liu argues that, even under California law, an order to compel arbitration is proper.[6] (*Id.* at 11.)

## II.   DISCUSSION

### A. Applicability of the FAA

The Parties dispute whether the FAA's substantive or procedural provisions (or both) govern the arbitration agreement at issue here. (*See* Doc. 9 at 22–27; Doc. 10 at 9–

---

[5] Barrelet also argues that the Court should stay this proceeding pending the outcome of the state court appeal. (Doc. 9 at 29–32.) Because the state court appeal has been resolved, this argument is now moot, and the Court will not address it below.

[6] Liu also argues that a stay of this matter pending resolution of the state court is appeal is improper. (Doc. 10 at 12.) However, as stated above (*see* Section I.D, n.5), this issue is now moot.

11.) As explained in detail above (*see* Section I.A), the California state trial and appellate courts agree that the arbitration agreement at issue here is governed by the procedural rules of the FAA but not the substantive rules. (*See* Doc. 9-1 at 67–68 [Tentative Ruling]; Doc. 12-1 [Appellate Court Decision].) The Court will not disrupt these rulings, as they are consistent with the plain language of the arbitration provision, which states, "[e]nforcement of, and any motion to compel arbitration pursuant to, this agreement to arbitrate shall be governed by the *procedural* rules of the [FAA], and not the California Arbitration Act, notwithstanding any language seemingly to the contrary in this Agreement." (Petition, Ex. A [Purchase Agreement], p. 14 (emphasis added).) *See also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter … , courts generally … should apply ordinary state-law principles that govern the formation of contracts."); *Cronus Invs., Inc. v. Concierge Servs.*, 35 Cal. 4th 376, 394 (2005) ("[P]arties to an arbitration agreement [may] expressly designate that any arbitration proceeding should move forward under the FAA's procedural provisions rather than under state procedural law."); *Victrola 89, LLC v. Jaman Props. 8 LLC*, 46 Cal. App. 5th 337, 345–48 (2020) (finding that the parties expressly incorporated the FAA's procedural provisions [9 U.S.C. §§ 3, 4, 10, 11] into an arbitration agreement when they referenced "enforcement" under the FAA in the agreement).

Additionally, the Court agrees with the state trial and appellate courts that Liu has failed to show that the transaction at issue here affects interstate commerce to implicate the substantive provisions of the FAA. (Doc. 12-1 at 7–9.) Liu asserts, without evidentiary support, that the transaction involves wealthy international buyers and the sale/transport of wine across state lines. (Doc. 10 at 10.) However, the Petition and the Purchase Agreement both characterize the Property as a residential property, and the Petition states that Liu (the buyer) is a citizen of California. (*See* Petition ¶ 1 ("Petitioner purchased a single-family residence…"); Petition ¶ 4, Ex. A [Purchase Agreement].) The Court cannot assume without support that any wine produced at the vineyard will be for more than consumption in the state of California or that Liu is an "international buyer." Further, Liu does not

explain how the agents' affiliations with Pacific Sotherby's International Realty and RE/MAX 2000 Realty implicates interstate commerce with regards to the transaction at issue here.  (*See* Doc. 10 at 9–10.)

Accordingly, the Court finds that the Parties unambiguously contracted for the procedural provisions of the FAA to govern the enforcement of the arbitration agreement and the transaction at issue does not affect interstate commerce.  Thus, Liu's Petition and Motion, brought pursuant to the procedural rule set forth in 9 U.S.C. § 4, are properly before this Court.  The Court now turns to the merits of Liu's Motion.

**B.   9 U.S.C. § 4**

"Section 4 of the FAA states that 'a party aggrieved by the alleged *failure, neglect, or refusal* of another to arbitration under a written agreement for arbitration may petition any United States district court ... for an order directing that such arbitration proceed in the manner provided for in such agreement.'"  *Lytton v. S. Cal. Reg'l Rail Auth.*, 683 F. Supp. 3d 1101, 1105 (C.D. Cal. 2023) (quoting 9 U.S.C. § 4) (emphasis added).  "A court reviewing a motion to compel arbitration under this section of the FAA, must determine: '(1) the existence of a valid, written agreement to arbitrate; and, if it exists, (2) that the agreement to arbitrate encompasses the dispute at issue.'"  *Id.* (quoting *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015)).  "Upon satisfaction of both elements, the court 'shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement.'"  *Id.* (quoting 9 U.S.C. § 3).

Here, as a preliminary matter, Barrelet argues that he did not refuse to arbitrate under the terms of the arbitration agreement.  (Doc. 9 at 19–20, 27–29.)  Barrelet contends that he merely refused to arbitrate with Liu's unilaterally chosen arbitrator—JAMS—in either Los Angeles or Orange County.  (*Id.*)  Second, Barrelet seems to argue that there is no "valid, written agreement to arbitrate" because the arbitration agreement was not properly

authenticated (*id.* at 20) and is void "as against public policy" pursuant to California Civil Code § 1953(a)(4) (*id.* at 21). The Court addresses each argument in turn.[7]

### 1. Failure, Neglect, or Refusal to Arbitrate

Here, the evidence shows that Barrelet filed the State Court Action alleging, among other things, breach of the Lease between the parties. (Doc. 9-1 at 23–29.) Liu sought an order compelling the State Court Action to arbitration, which Barrelet opposed. (Doc. 9-1 at 67–68.) After the state trial court ruled in Barrelet's favor (*id.*), Liu again demanded arbitration (Doc. 4-2 at 3, Declaration of Paul S. Marks ["Marks Decl."], ¶ 2). Liu filed a demand for Arbitration Form with JAMS and paid the $2,000 filing fee. (*Id.*; *see also* Ayers Decl. ¶ 8, Ex 7.) Counsel for Barrelet refused to the accept service of the arbitration demand, asserting that the arbitration agreement at issue does not provide for arbitration with JAMS, that the arbitration agreement does not provide for arbitration in Orange County or Los Angeles, and that the state trial court already considered Liu's motion to compel arbitration and denied the motion on the grounds that the arbitration provision is invalid under applicable California law. (Ayers Decl. ¶ 9, Ex. 8.) In response, counsel for Liu stated they would "entertain any proposal for a different neutral[.]" (*Id.* ¶ 10, Ex. 9.) Counsel for Liu also stated that "[t]he location of the arbitration is also not dictated by the arbitration agreement" and that "[i]n this day and age, many if not most cases are handled remotely, and our side would agree to that." (*Id.*) Counsel for Barrelet did not propose a different neutral or agree to arbitrate remotely.[8] (*See id.*)

Assessing this course of events, the Court finds that Barrelet has repeatedly failed, neglected, or refused to arbitrate. Notably, counsel for Liu demonstrated a willingness to select a mutually agreeable neutral and to conduct the arbitration remotely, and counsel for

---

[7] Barrelet does not challenge that the arbitration agreement "encompasses the dispute at issue" here. Therefore, the Court will not address this prong of the analysis below.

[8] JAMS later declined to proceed with the arbitration because the Purchase Agreement does not name JAMS or the JAMS Rules. (*Id.* ¶ 11, Ex. 10.)

Barrelet did not respond. Additionally, Barrelet now opposes this Motion. "'[T]o agree with [Barrelet's] argument[] that []he has not refused a request for arbitration in the meaning of the statute would create an absurd result: [denying] a motion to compel arbitration against a party who argues that she never refused to arbitrate in the first place. Neither common sense nor precedent countenances such a result[.]'" *Kolev v. Porsche Cars N. Am., Inc.*, No. SACV 07-1171 AG (ANx), 2008 WL 11338780, at *3 (C.D. Cal. Jan. 30, 2008) (quoting *Discover Bank v. Vaden*, 489 F.3d 594, 607 n.20 (4th Cir. 2007)). Thus, the Court finds that Barrelet failed, neglected, or refused to arbitrate. The Court now turns to whether there exists a valid, written agreement to arbitrate.

### 2. Valid, Written Agreement to Arbitrate

As stated above, Barrelet argues that there is no "valid, written agreement to arbitrate" because the arbitration agreement was not properly authenticated (Doc. 9 at 20) and is void "as against public policy" pursuant to California Civil Code § 1953(a)(4) (*id.* at 21). The Court disagrees. First, the Purchase Agreement, including the arbitration provision, were authenticated by Crystal Chen, Liu's real estate agent who assisted in the preparation and signing of the relevant documents. (*See* Doc. 4-2 at 2, Declaration of Crystal Chen ["Chen Decl."] ¶ 3.) Barrelet has not cited any authority supporting his position that Chen's authentication is insufficient.

Second, while the state trial and appellate courts held that California Civil Code § 1953(a)(4) precludes arbitration of Barrelet's **tenancy related claims**, they did not hold that California Civil Code § 1953(a)(4) precludes arbitration of Liu's claims related to the Purchase Agreement. (*See e.g.*, Doc. 12-1 at 2, 9–12 ("The trial court further concluded that section 1953, subdivision (a)(4) voided any agreement between the parties to arbitrate *tenancy related claims*. … We … affirm.") (emphasis added).) In his Opposition, Barrelet largely ignores the fact that Liu moves to compel the arbitration of claims brought under the Purchase Agreement, rather than the Lease. In a brief footnote, Barrelet argues that the entire arbitration provision is void because the Purchase Agreement and the Lease are a single contract. (*See* Doc. 9 at 21, n.21.) However, Barrelet does not cite any authority

supporting this position, and the Court is concerned that such a finding would essentially invalidate the arbitration provision found in the CAR's form California Residential Purchase Agreement and Joint Escrow Instructions any time it is accompanied by the form Residential Lease After Sale.

Finally, Barrelet has not cited any authority suggesting that the arbitration provision found in the CAR's form California Residential Purchase Agreement and Joint Escrow Instructions is void as contrary to public policy.

### III.   CONCLUSION

Based on the foregoing, Liu's Motion is **GRANTED**.  The Court **COMPELS** the Parties to arbitrate any and all claims related to the Purchase Agreement only.  Consistent with the state trial and appellate court's findings, the Court does not compel the Parties to arbitrate any and all claims related to the Lease.

**IT IS SO ORDERED.**

DATE:  November 22, 2024

_____
HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE